Good morning, everyone. We have four cases on the calendar today, one of which is on submission. I understand that all counsel are present for the argued cases. So we'll begin with number 204202 and 2156, Murray v. UBS Securities. Thank you, Your Honor, and may it please the Court. This Court's decision in Tompkins requires reversal of the District Court's holding that retaliatory intent is not required for liability under Sarbanes-Oxley. Both the FRSA and Sarbanes-Oxley contain the same prohibition against discrimination based on protected activity, and Tompkins squarely held that statutory language forbidding an employer to discriminate against an employee for engaging in protected activity requires the employee to prove that she was the victim of intentional retaliation. The same result necessarily follows here for the same reasons. There was no jury instruction in this case that said you don't need to prove retaliatory intent, right? So what is the actual – you're saying that Tompkins means that the District Court was required to instruct the jury on retaliatory intent? Well, so there are two points. We have a judgment as a matter of law argument. And you have that argument, right? Okay. And then with respect to the jury instruction, when – so UBS requested an instruction on retaliatory intent and objected to the absence of such an instruction and explained that the judge's instruction that it tends to affect in any way meant that the jury could find liability without finding retaliatory intent. Can I just jump in? Or did you want to finish? The reason why it could do that is why? Because of your argument about tends to affect, meaning it could go in either direction? Is that the argument? Well, in part, and also because there's no requirement that the – when it tends to affect in either way, there's two problems with that, right? It doesn't actually require any effect. So by definition, it doesn't require intent to achieve an effect when there's no effect actually required because tends to doesn't require an actual effect. And then in any way means it could be an effect to help. And indeed, there's no – this isn't just speculation or hypothetical. Both the district court and Plaintiff's counsel took the position that under the court's instruction, the jury could and would impose liability in the absence of retaliatory intent. In fact, the Plaintiff's counsel argued, and this is at page 1242, I believe, of the instruction – I'm sorry, of the joint appendix. At 1242, Plaintiff's counsel argued that one doesn't have to have an intent to retaliate. So if Mr. Schumacher wanted to help Mr. Murray by getting him a job as a desk analyst and that this was in some fashion related to protected activity – But Counselor, didn't the judge get the – didn't the judge get Plaintiff's counsel to agree that they weren't going to make that argument? No, Your Honor, no. The debate there was a separate question. Plaintiff's counsel agreed that the attempt to transfer Mr. Murray was not itself adverse employment action. Right. And so you're asking us to believe that the jury found you liable because they thought him complaining – that you were helping him because he complained about his protected activity? They actually found you liable for that? That is certainly a possibility. And again, both the district – Because what in the record could have given them that possibility? Because under the court's instruction, if the conduct was related in some fashion to protected activity and tended to affect in any way – Some of the fact that was before the jury that you think might have plausibly led to them to reach the conclusion of finding you liable because they thought he was getting helped because of his protected activity. Your Honor, Plaintiff made precisely that argument. Plaintiff affirmatively argued that the Court's contributing factor instruction meant – and again, let me point the Court to page 1242 – it meant that if Mr. Schumacher wanted to help Mr. Murray by getting him a job as a desk analyst and didn't have an intent to hurt him or destroy him, but merely wanted to solve the problem that he had, the independence issue, that would be sufficient in terms of contributing in any way. That's at 1242. So Plaintiff has conceded precisely that point. Immediately after Mr. Herbst said that, the Court said, but let's be clear that's absolutely not what's going to be argued in two days because I asked at the very beginning of the trial what was the adverse employment action, and it was focused on the termination. Yes, but there are two different points. As Mr. Herbst explained on the next page on 1243, Mr. Herbst agreed. He was not saying that the attempt to transfer the plaintiff was an adverse employment action, but what he was saying was that it was evidence of contributing factor, which is a separate element from employment. But couldn't it be evidence of the, so couldn't it actually be evidence of retaliatory intent? So if in fact somebody at UBS wanted to move Mr. Murray from the job in which he was subject to these ethical constraints to a job in which he was not, wouldn't that show, couldn't a jury infer from that, that UBS was concerned about his complaints about violations of the ethical rules? Well, I don't think we would agree with that, but for purposes of the jury instruction, it doesn't matter whether the jury could infer. The question is whether the jury understood the proper legal framework under which it needed to make that decision. And here it would certainly have affected the jury's assessment of that question had it known that the question ultimately is whether the termination was causally connected in some fashion to retaliatory intent as opposed to an attempt to help him. And again, Mr. Herbst reiterated, he said what I just said, that is yes. I understand how literally when you say tended to affect, it could mean helping him. But I mean, jurors are not robots. Like in the context of a trial and the jury's imposing liability for retaliation, I mean, is it really plausible that a jury is going to impose liability because they think that the employer benefited the employee? Well, it's not a question of whether they actually benefited. Under the instructions, it's a tendency. But again, the jury, the plaintiff's, I'm sorry, the district court in her JMAW ruling also pointed to this act of Mr. Schumacher in attempting to find a job for the plaintiff as a potential basis for the jury's finding. And as I said, and I just want to make clear this. Because she says that it might show that UBS did want to move Mr. Murray out of the job in which there was, in which he was refusing to comply with the instructions from the business side, right, into a job in which there wouldn't be an independence requirement, right? Well, but again, if the only evidence of Mr. Schumacher's mental state is that he was trying to help the plaintiff by finding him another job, You can say he was trying to help the plaintiff, but I think the district court's point was that that might not be trying to help the plaintiff. It might be trying to help the company by moving him out of a job in which there is the ethical, there were independence requirement into a job in which the business side could tell him what to put in the reports. Well, maybe, but we don't know what the jury thought. And the instruction allowed the jury to think what the plaintiff argued it could think, which is even if Mr. Schumacher is trying to help him. And I just want to make this point because the court seems to have a different view, but this question about the difference between using this as evidence of adverse employment action and using it as evidence of contributing factor, the judge ultimately agreed with Mr. Herbst that it could be used on the contributing factor side, and this is on page 1243. Can I ask how the jury could have, I'm sorry, the district court could have erred as a matter of law with the jury instructions when Tompkins wasn't decided, and no court in this country, including this one at least now, has extended Tompkins to the Sox context? Well, the question of what the law requires is different from the question of whether the Court of Appeals has said what the law requires, right? I mean, this isn't a qualified immunity case. The judge, I'm not, I'm not suggesting that judges. But it's not law yet, right? It might be one day. One day this court might decide that in the Sox context we have to require retaliatory intent, but we haven't yet. So how was it erroneous as a matter of law? Well, Your Honor, just because, you know, if a court is instructing the jury without any binding precedent, and the court gets to that law. No, but that's not fair, right? Because she does have binding precedent. She has every other circuit that has reached this case using the tended-to-effect language, and she has the ARB. So in the world she lived in, and certainly the world we live in right now, it is correct law. Well, Your Honor, binding precedent is from this court or the Supreme Court. There is no binding precedent on this question other than Tompkins, and the circuits are split more broadly. The circuits are split on the idea of whether or not retaliatory intent is required on the FRSA context. No circuit has thus far, am I wrong? No circuit has thus far said that in the Sox context we require retaliatory intent. That's correct. And only one circuit, as far as I'm aware, has said that it's not required in the Sox context, and the reasoning there was in reliance on the Murano decision from the Federal Circuit. Okay, so again, my question is how is she wrong? If we are correct, as Tompkins makes clear we are, that retaliatory intent is required for liability, then it necessarily follows that the jury was not properly instructed, and UBS's request for an instruction was correct, and that's reversible. What is the best case you have that says that we need to make a three-week trial happen again because we might hypothetically in the future change the law? What's the best authority that I have for that? Because that seems to me to be a real problem in terms of judicial economy. Your Honor, I'm not aware of any case that says a party's request for a proper instruction under the law, as it would be when first resolved by the Court of Appeals, can be ignored because the Court of Appeals hadn't yet resolved the question. If that were the test, then you would never get to the Court of Appeals. I guess what you would say is that we should in this case decide that Tompkins applies to the Sox context, and therefore we are deciding that the instruction was erroneous. That's correct, Your Honor. You'd still have to prove prejudice, though, right? You'd still have to prove that the error wasn't harmless, and you're not disputing that she used the word retaliate at least eight times, right? Your Honor, the word retaliate doesn't clearly, in the mind of a late jury, resolve this question. In fact, the one case that Your Honor was suggesting, the Halliburton case out of the Fifth Circuit, that says retaliatory intent is not required, its reasoning is, as I mentioned, based on the Murano case and the Fifth Circuit case following the Murano case, and it says, well, look, this previous Fifth Circuit case following the Murano case applied the tends-to-effect-in-any-way language. Therefore, we conclude retaliatory intent is not required. So the Fifth Circuit recognized what the jury here presumably recognized, which is under the tends-to-effect-in-any-way instruction, retaliatory intent is not required. That was legal error, and that's highly prejudicial in a case where, as here, the district court said Plaintiff's case was marginal. In fact, she said it was one of the closest cases on the facts she's ever seen. I really read the district court opinion. I assure you that I did, multiple times. The part that I'm wondering is why do you believe that it is implausible that the jury would not have reached the same conclusion had you gotten exactly the jury instructions that you want? What facts would have countered? We had so many facts like meeting with the HR professional, the person talking about Schumacher telling him, you have to work within the confines of making your client happy. There's a whole bunch of facts. So can you tell me what facts suggest that it is implausible for the jury to have reached the same conclusion had they gotten the jury instructions exactly as you wanted it? Two responses, Your Honor. First of all, that's not the relevant test. The relevant test under this court's decision in Warren is whether this court can be convinced that the error did not influence the jury's verdict. That's the test for harmless error. And that test is clearly not satisfied here because, as the district court said, this was a close case. There was no actual evidence of Schumacher's intent to retaliate against the plaintiff. Certainly, that would be a debatable issue on this. I mean, we believe we are entitled to judgment as a matter of law because of the absence of evidence. But in any event, it's at the very least a very debatable question whether the jury, in a marginal case, one of the closest the judge had ever seen, could certainly have gone the other way had it known that in addition to the incorrect tends to affect in any way instruction, it had to find actual retaliatory intent. And so the court can't be convinced that it didn't make any difference. Can I ask you a question about the tends to affect? So the jury asked a question about tends to affect in any way, and then the district court answered the question. In the transcript, it seems like this is the district court explaining what it's going to say to the jury, to the lawyers, as opposed to the actual response to the jury, but I assume that it's the same thing. And she says, you should consider, number one, who had knowledge of any protected activity in which Mr. Murray engaged, and two, did anyone with that knowledge of the protected activity because of the protected activity affect in any way the decision to terminate Mr. Murray's employment? Now, I understand you're going to say affect could go either way, and Sue still have that problem. But she did avoid using the language of tended. So does that clarification to the jury of remedy the problem that tended is ambiguous? Does it require an actual effect? Because she says because as opposed to saying tended. And wasn't because of one of the, wasn't, is my memory correct, that one of the times you actually used the because of language? When you were requesting jury instructions? Well, I mean, that's in the statute. We may have used that. But the point is we requested a different, I mean, the instruction we requested was, number one, that the jury be informed that the plaintiff had to prove retaliatory intent, and number two, that the jury be informed that the, that to be a contributing factor, the conduct actually had to contribute to bringing about the adverse. Your proposed instruction was you wanted to say caused or helped cause. Helped cause, yes. So if in fact she said, and I understand it's in response to a question, that something needs to affect the decision because of knowledge, because of the protected activity, why isn't that the same thing as saying that there's a causal connection? And, I mean, maybe your answer is the response to the question can't fix the problem of the initial jury instruction. That might be an answer. I'm just curious what your response is to the argument that her response to the jury's question fixed the problem in the earlier instruction. Yes, so two responses. First of all, the judge in that same passage before she says that, she says, I refer you to pages 21 and 22 of the charge with respect to your inquiry about the contributing factor element. Page 21 of the charge is the court's instruction, the same thing, including the tends to language. And then secondly, as Your Honor noted, the court's paraphrase of that instruction that she had specifically referred the jury back to, it still included the in any way language. Because of doesn't solve the problem. The question is not whether there's any causal nexus included in the instruction. I'm separating out two objections. So one objection is that the tended to language allows you to impose liability based on a hypothetical as opposed to an actual cause. The other one is that the effect language means it could go in either direction. It could either help the employee or it could hurt the employee. And so I understand you have that objection about the direction. I guess my question is when she clarifies that it should be because of, does that fix the hypothetical problem? I see. I think no, Your Honor. In fact, if anything, it just confuses the jury worse. Because now they have, if they took her sort of summary as intending to be a full statement of the test, it would therefore mean that she was changing the test from the instructions on page 21, which she had also referred them back to. So confusing the jury does not solve and cannot solve the prejudice. What would you have to say about Bechtel? We said the sole burden is to prove by a preponderance that the protected activity contributed to? Yes, Your Honor. Well, Tompkins holds that, I mean, that is the test. But Tompkins holds that in order to be a contributing factor, there must be proof and a finding of retaliatory intent. So that doesn't affect the argument. So the Tompkins explains what Bechtel meant by contributed to. That's your way of reading them together. Exactly. I mean, Tompkins is expressly talking about the contributing factor requirement under the statute. And remember, the contributing factor comes from, I won't try to say the name, the shorthand is AR-21, which is incorporated into both the Sarbanes-Oxley statute and the FRSA. So it's the same contributing factor requirement. But even so, if we think that Tompkins, the Tompkins standard, the retaliatory animus is incorporated into the contributing factor standard, does it really require a separate jury instruction? So you object to this jury instruction because, as we just said, it might allow for imposition of liability when there's a hypothetical effect and not a necessary causal effect, and it might allow for liability when the employer was trying to help the employee. If you fixed both of those problems, do you still need a separate instruction on retaliatory animus? If it were clear that it has to be an actual cause and that it has to be to the detriment of the employee, why would you need a separate instruction on retaliatory animus? So is it your Tompkins argument just supports the other arguments you're making about the problems with the jury instruction? Well, it's both. I mean, the general rule is a party is entitled to have the jury instructed on the party's theory of the case if it's supported by the applicable law. And when the defendant says, I don't think I acted with retaliatory intent, and the law requires proof of retaliatory intent, the defendant is entitled to have the jury instructed on that. And the objections that were made here raised all of these issues, I mean, including at the charge conference. So you think that there are three problems with the jury instruction. One is it allows for imposition of liability even when there's a hypothetical effect and not an actual – it's not an actual cause. Two is it could go in either direction, either helping or hurting the employee. And then three, even if we resolve both of those, you still think that there should be a separate jury instruction that says there needs to be a showing of retaliatory animus. Is that right? That's correct. And certainly here where you have all three problems and where the first two further exacerbate the third, that is, as the Fifth Circuit said in Halliburton, that the instruction used here leads to the conclusion that intent isn't required. You're affirmatively misleading the jury about what the law requires. I mean, obviously there are different ways you could achieve the goal of accurately – But the instruction didn't say that intent wasn't required. It just said that it doesn't need to be the primary reason, right? Right. But what I'm saying is the Halliburton court said, reading that instruction, they said, it therefore follows that retaliatory intent is not required. That's the holding of the Halliburton court relying on this erroneous Barano instruction from the Whistleblower Statute that doesn't include discrimination as a requirement. I see. Okay. Okay. Thank you. Why don't we hear from the counsel for Murray. Thank you. Thank you, Your Honors. May it please the court. I'm here to defend the jury instructions and also to discuss the inadequate and erroneous factual findings on back pay and reinstatement and also the fee issue. But I want to, in light of the court's interest in the first issue, say that the original and supplemental charge taken together were not only correct, but they were what UBS sought. UBS never sought a contributing factor charge with the words retaliatory intent or motivation, never objected to the contributing factor or other charge. They proposed an instruction that said that Mr. Murray has the burden of proof in showing retaliatory, I forget if it says animus or intent, but it says something about retaliation, right? Only in describing the general claim, not in the contributing factor element. And the judge adopted, by using the word retaliation to describe the claim, she adopted the defendant's position and they never objected even to all those general charges and uses of retaliation. I mean, they did describe the issue, right? I beg your pardon? The district court did say the defendants have asked me to find that SOX requires proof that a UBS employee with knowledge of the projected activity contributed to the decision to eliminate plaintiff's position with the intent to eliminate the position because of his or her knowledge. And I think that overstates the contributing factor standards. Yes, but they didn't object. After the charge was given, they never objected to the contributing factor charge on the ground that it lacked retaliatory motivation or intent. And in fact, it did have an element, as Your Honor pointed out, of improper motivation, because she said it was not the primary one. And she also charged, by the way, that- Robert, just to clarify the objections. Yes. UBS did object to that specific instruction and say that instead of saying tended to effect in any way, it should say caused or helped cause, right? Yes, but not on the ground that it didn't have retaliatory motivation. And when she said at the end, we reiterate, or the judge asked them to specifically list their objection. She said contributing factor on the basis that we previous objected to it. They never objected to that charge on the grounds that it didn't have that retaliatory intent language. And the best evidence of that is the letter that they sent after the charge conference that night on December 19, JA 3030, which only talks about cause and cites Murano, by the way, in the cases that UBS is disclaiming now. So if we think that Tompkins means, or not necessarily from Tompkins, or we just think that there needs to be some evidence of retaliatory intent, wouldn't that make the objection about showing a causal connection even stronger? Because if, in fact, retaliatory intent is required, it gives extra force to the objection that tended to effect in any way is too loose a standard. Manion, which was issued two years ago, Judge Park was on the panel, says that you have to object to the instruction on the specific ground that you are asserting after the instruction is given. And that did not happen here, Your Honor. And at no time, by the way, did they see the contributing factor instruction that they gave. Okay. I mean, I have that argument that they didn't object to it. But so then let's talk about the one that they did where you agree that there was an objection about cause or helped cause. Right. So there was the instruction about tended to effect in any way. And I find that puzzling because usually when you talk about whether something tended to effect something else, you talk about a kind of general condition, right? So if you say, did Mr. Murray's conduct tend to effect the way people treated him in the office, you might say yes or no because, well, in some instances it didn't effect it and in other instances it did, but the general condition was that it effected it. And so you might answer yes, right? So tended to is kind of like a general tendency over a series of interactions. Right. But what does it even mean when the district court is saying he did one thing, he did the complaint about the interference with his independence, and UBS made one decision, which is to terminate him. Right. What does it mean to say that the complaint tended to effect its decision? Didn't it either effect it or not? Well, yes, and in fact, that's what the clarifying instruction basically said. So you're agreeing that the tended is ambiguous and confusing. You think it's saved by the clarifying instruction. Or is it maybe a mixed motive? Is that what it said, that it could be one of a contributing factor? Well, yes, it could be. But the judge said, and by the way, it's not just what she said in colloquy. She actually instructed it, and it's at supplemental appendix AA24 and JA1418. You should consider who had knowledge of any protected activity. And did anyone with that knowledge of the protected activity, because of that protected activity, effect in any way the decision to terminate Mr. Murrow's employment? Tended was out, and the causation, which they, that was the fundamental objection of the contributing factor instruction that they gave throughout the charge conference and so forth. That was inserted, and they approved it. They were happy with it. They said, Your Honor, we're comfortable with that formulation. And they did not object to it. So you're saying that maybe tended was ambiguous or was confusing, but it's saved by this clarification in response to the jury's question? Is that your argument? Well, certainly the second, Your Honor. It's the instruction that's been given in every contributing factor case that we know of, including the FRSA cases. Can I just ask about the instruction itself? So you're demurring on answering the question as to whether it was confusing, but do you get my point that usually when you say something tended to affect something else, it's not an actual effect. It's whether there's a tendency or whether it's likely to have. And so if the district court had rested only on tended to effect, it would not have actually required a causal connection. It might have allowed the jury to say, Well, that's the kind of thing that might have affected a decision like this, and therefore will impose liability. No, I don't think because likely is the standard. It's probability is the legal standard on contributing factor. And the affirmative defense on which the defendants have the burden takes care of the issue of intent and causation because the jury found, and it was properly instructed, and you're not challenging it here, the jury found that he was not terminated for a legitimate, non-causal, non-retaliatory reason. And that should end it because it's ended it in every single SOX case and FRSA case that's been tried. Can I ask why we shouldn't extend Tompkins to the SOX setting? I'm assuming you assume that we shouldn't. So am I correct about that? Yes. And I adopt the arguments of the members of the Congress who wrote you a brief on the subject. Congress has been trying to remove retaliatory intent from the whistleblower statutes ever since they did it in the civil service statute, the first one decades ago. Okay. So let's presume for a minute that we do. If we extend Tompkins to the SOX setting and, therefore, there may be some question as to whether or not the jury instruction reflected the law as it stands after we make that decision, what would, are we compelled to set aside the jury verdict because of that, or was that jury instruction harmless error?  It's not just harmless error. It's in the plain error category, and they don't even argue plain error here in their briefs. It's, if you don't object to the fact that there wasn't an instruction that told the jury in Hikever, but you have to prove intentional retaliation. Can we, with the hypothetical, can I add that we disagree with you that they didn't object to it? So if we believe that it was properly objected to and we extend Tompkins to the SOX setting, would it still be improper to set aside the jury verdict and why? Did they have enough facts to be able to reach the conclusion that they reached anyway? Well, the facts on retaliatory intent and causation are absolutely crystal clear in this case. You have the quick turn by Schumacher from Trevor Murray's best fan to overt hostility immediately after his protective activity. On December 12th, three days before Murray made his protective complaint to him, Schumacher wrote an email anticipating that Murray would continue to be employed and not rift because his revenue production was fine. That's J.A. 1532, plaintiff's exhibit 63, and J.A. 466-67 and 407-15. On December 15th, three days later, just before hearing Murray's complaint, Schumacher gave Murray a glowing review, talked to him, said he was a great ambassador for UBS's franchise. So you're saying he liked him, but then a month later he's suggesting that he be taken off their payroll. Yeah, well, first of all, he compounded the other. But isn't that in the context of a reduction in force requirement that UBS? No, actually, if you look at the smoking gun email that he wrote, which is plaintiff's exhibit 92, it was really in the context of the bonus pool. But it doesn't matter what the context was, because what they did was they took someone else who they had planned to rift and they substituted Murray. For no overt reason. And remember, it only has to be a contributing factor. It doesn't have to be the sole reason. You are inferring from the temporal proximity between the complaint and this email from Schumacher that it must have been retaliatory animus. But isn't that exactly what Tompkins says? There has to be more than a temporal proximity. There needs to be actual evidence of retaliatory animus. It's not just temporal proximity, Your Honor. It's the fact that he's switching from fandom to hostility. And he says, well, you know, you have to do what they want, which is compounding the illegality. He testified that he knew that. That's what he said to Murray. Yeah, he had to escalate. The email between him and Hathaway doesn't express hostility except that he says we should move him off the payroll to this other job. But he also wrote that email only because Hathaway wasn't available to have a secret conversation by phone. Why would he want to do it in secret to say that Murray should be placed? So you're saying the jury could have inferred something from that? Definitely. And they also could have inferred just from the fact that he's talking about moving him to a desk analyst, which would remove the illegality that he was complaining of, that that's what's motivating all of this. So I guess we talked about that with opposing counsel. So is that evidence of retaliatory animus, the fact that he wanted to move him to a desk analyst job? Yes. Why is that? Because it does help him, right? It means that he doesn't get eliminated. Yes. But, well, first of all, it's taken away from the status job that he has. And it's not anything he wanted. He never discussed it with him. Unlike his usual practice of discussing with people that he's thinking about moving or their job is in jeopardy, he tells them. But here, I'm sorry, Judge, I lost my train of thought. I was asking, it shows that he's helping him. So I was asking whether it's evidence of retaliatory animus, and you're saying that it is. Yes, because what he's saying is we've got to fire him unless Cohen takes him on as a desk analyst. He's not saying, well, let's just move him. The basic recommendation is fire him, terminate him. And, by the way, the discussion about the hypothetical during that charge conference was about evidence of knowledge and whether retaliation should be used at all. And the judge said something very interesting, which, by the way, UBS did not challenge. The judge said at 1242, JA 1242, if the charge required a causal connection of some degree between the protected activity and the adverse action, how is that not retaliating? And she's right, because you can't retaliate without retaliatory intent. You can't accidentally retaliate. They were happy with the word retaliation all over the charge. That was what the dispute was about. So then your argument is that actually the jury instructions did require a showing of retaliatory intent. It did, when it says in the charge that the plaintiff is only entitled to compensation if they find that the defendants are – Well, actually, can I ask you this question, just stepping back? I mean, looking at what you just quoted, the court says, but the elements – she says, how is that not retaliating? And you respond, because one doesn't have to have an intent to retaliate. Well, because that was my position, that Sox didn't require an intent to retaliate, but she rejected it. And by the way, the UBS counsel at 1246 said, well, judge, this is why we want the contributing factor instruction to be changed in the way that we suggested before, which only had causation language in it. It didn't have retaliatory intent in it. So you are – you say on that page, if Mr. Schumacher wanted to help Mr. Murray by getting him a job as a desk analyst, wanted to help him – if Mr. Schumacher wanted to help Mr. Murray, that would still satisfy the statute, right? That was your position. My position was that the jury could be confused about it and that causation is what the judge should charge in contributing factor language, not retaliatory animus or retaliatory intent. And this is what – I'm sorry. You said in the district court, if Mr. Schumacher wanted to help Mr. Murray, that would be sufficient in terms of contributing in any way, right? I guess instead of getting hung up on what was said at the colloquy, why don't I just ask this question? So doesn't the jury instruction that says tended to affect in any way mean that if Mr. Schumacher had said we should not fire him because he made the complaint and so therefore it was a reason not to fire him, that would still affect in any way the adverse employment action, right? No, it's got to affect the sole adverse employment action that's being litigated before the jury. The judge made this clear. She said, in addition to putting retaliation language all over it, she said, look, you can't argue to the jury that because Mr. Schumacher recommended before termination that he be transferred to a desk analyst, that that's an adverse employment action. And we say yes, because we don't – we've never contended in this case that that was an adverse employment action. So the question for the jury was, did what Mr. Schumacher did contribute to the termination, to the termination, to the firing? And here's what the judge – I'm sorry. Please finish, but I've got a question. This is – the judge said to the jury, plaintiff was only entitled to compensation if they find that defendants improperly retaliated against plaintiff in terminating him from UBS, JA 1396. You can't have an accidental or unintentional retaliation. Sorry. I just want to make sure that I understand the timing right. So it was around August of 2011, right, that we – that there was a concern for financial issues within the company and that they suggested they were going to have to do some layoffs. In December, Mr. Schumacher predicted that Mr. Murray's job was going to be safe for at least a year. In the middle of the month is when Mr. Schumacher told Murray about the – Murray told Schumacher. Murray told Schumacher that he was upset about the improper pressure that he was being – experiencing. But up until that point in time, there had been no indication that he had been part of the riff. In fact, there was the contrary, that he would be safe for at least a year. Correct. And Schumacher testified as much directly. I just want to make sure I have your response on what we should do with Tompkins. And I think you said earlier that Congress and SOX intended differently for the whistleblower protections here. Is that how we distinguish? Well, yes, but the thing – that – but also, you know, Tompkins didn't address what you tell the jury in the liberations, in the charge. It was a summary judgment case, and it was assessing the record as a whole to determine whether there was evidence of intentional retaliation. But there's a legal question whether retaliatory intent is something that is required for a retaliation claim. Right. But my argument to you is when the judge charges them and says, you've got to find improper retaliation, that that's the equivalent of saying you have to find intentional retaliation before you can give them any money. And then they don't object to any of it. And on the Romanian, I don't see how – it's a closed issue. Can I spend a couple of minutes on the cross-appeal? Just to clarify what you just said, so then it sounds like you're saying the jury instructions actually did require retaliatory intent. Yes, and I'm also saying that the requisite causation under SOX and these other whistleblower statutes – and there are cases that have said this, we cited in our brief – there's an inherent retaliation that's required. And that's what the judge basically asked me. She said, if there's a causal connection, how can there not be retaliation? And I didn't have a good answer, which is why she rejected my push that she not even mention retaliation in the charge. So this is not a case, is what I'm saying, to reverse. Why don't you take just two minutes to address your cross-appeal issues? I thank the Court. Okay, on back pay and reinstatement, the fact-finding was not only inadequate under Rule 52, but it was clearly erroneous. All the judge said was I have difficulty seeing on back pay. I have difficulty seeing evidence to support any reason that Murray would have remained after Cohen's departure. You can decide whether that complies with Rule 52, but in effect, she was putting the burden on Murray to prove a limitation – to prove that he would have been employed throughout instead of on UBS to prove a limitation on back pay. And the District Court doesn't even tell us whether it concluded that Murray would have left voluntarily or involuntarily for legitimate reasons. And there was no evidence he would have left involuntarily when Cohen left, and no evidence that his employment was dependent upon Cohen's continued employment at UBS. There was nothing in the record that tied his employment to Cohen's employment. And in fact, there were a bunch of people on the business side that stayed after Cohen left, and there's no evidence that Murray would have been fired or left. On reinstatement, the same problem. Apart from the issue of whether shall means shall and whether reinstatement should be mandatory, the District Court only said that Murray made numerous allegations of misconduct against numerous UBS personnel, testified passionately that he was confronted with a mosaic of illegality, and it was unclear whether there was a suitable reinstatement job available for Murray at UBS. Again, the burden should have been on UBS to prove that reinstatement was – this was an extraordinary case that reinstatement was not appropriate. And in fact, the evidence was that they still had a slot as a CMBS strategist there. They hadn't filled it. And the evidence was that that's nice to have, but it's not a necessity. Well, if it's nice to have and this huge investment bank has almost 100 strategists on plaintiff's exhibit 81, you know, there's no showing that they couldn't find a slot for him. And there was absolutely no showing of any hostility that anybody had to Murray. And in fact, Mr. Chung said to the jury at 2250 of the transcript, there's no evidence at UBS that anyone at UBS was mean to Murray or had it in for him. Actually, you heard the exact opposite. The only thing you heard was that he had perfectly cordial relations with Cohen, McNamara, Schumacher, everyone. They actually all liked him. So this irretrievably broken because of hostility is no support for that in the record. I'm sorry, are you saying that there was no hostility between Murray and Cohen? Cohen was gone, Your Honor, by 2000. You just said that the evidence showed there was no hostility between him and Cohen. I mean, isn't the whole point that there were people at UBS who didn't like that he wasn't following the instructions from the business desk? Other than that is what I meant to say. I'm rushing. But I think it's error, Your Honor, to use the hostility from the fact that he sued, that he complained about illegality, which is what Sox is supposed to do. I get that argument. I just was reacting to that. Yeah. But I understand. Okay. And on fees, we do want to hand up or we'll file a Rule 28 letter. There was an issue, there was a decision that just came out by Judge Nathan, your newest colleague, in a case that reveals that when Judge Phaler cut my hourly rate to $650, which UBS, by the way, UBS didn't challenge my $800 hourly rate. She cut it to the hourly rates of Gibson Dunn's first year. Mr. Herbst, why don't you file that on the docket and we'll consider it on the papers. All right. Can I just say that with respect to the fees, Your Honor? You're well over your time. We've given you some leeway here, but why don't you wrap up? Okay. If there's any case that does not warrant a 52% cut in the lodestar, this is it. This case has been going on for 10 years. It was hard fought against a tenaciously defended. The judge basically said that herself. She slashed us for duplication without ever identifying any specific duplication. She erroneously ruled we were overstaffed and inefficient when we had fewer lawyers on the case in a trial than Gibson Dunn. There was a refusal. We'll review the letter. Okay. Thank you for your argument. Thank you. Thank you. Mr. Hungar, you're reserved a few minutes for rebuttal. Thank you. Would it help me if you covered the reinstatement argument that your opposing counsel made, please? Yes. Yes, Your Honor. First, if I'd like to briefly just respond to the argument that we never objected at the charge conference to the raising intent. That's simply not correct. Counsel specifically said, with respect to the tended to effect in any way instruction, that it could mean it's basically strict liability regardless of whether the manager, quote, actually intentionally acted to cause the termination. That's at 1240. So it was specific. And counsel also referred the judge to the written briefing, which laid all of this out in detail. So the intent instruction objection was clearly made and preserved. There was no obligation to reiterate objections to the instruction when the jury question came in. You don't have to keep asking the judge when the judge has already ruled against you. With respect to Your Honor's question about the reinstatement, the judge found, based on ample evidence, that Mr. Murray would not have stayed at UBS longer than Mr. Cohen. Remember, Mr. Murray and Mr. Cohen started at the same time as part of UBS's attempt to build up its CMBS business and attain a top five status. So you dispute his reading that reinstatement is required absent a strong showing of possibility. Is that basically the rest of your argument? Well, we certainly – I mean, he makes a couple different – we dispute his argument that it's required, that it's mandatory in all cases, and there's no case law to support that. And the text of the statute doesn't require that. But here – but we also – and the law is clear. I mean, this court in Whittlesey and the Supreme Court in Pollard made clear that reinstatement isn't always required. And here, it's certainly not required when it would be a complete windfall, because the judge found, based on ample evidence, that he wouldn't – I mean, they were reducing the emphasis on CMBS. They were laying off people. They were – Mr. Cohen left, he said, primarily because they were no longer trying to make this a major focus. And they were laying off my people, and I want to go someplace where they were focusing on CMBS. There's no chance that they would have kept a strategist. Remember, a strategist is just nice to have, as the evidence showed. They're not – they don't produce any money. They're writing independent research kind of as a side benefit for customers that provides no income. So if you're laying off salespeople and traders who actually do produce income, you're obviously not going to have kept around a strategist who doesn't produce income and is just fluff when you're trying to reduce costs. So the judge had ample evidence to find, and the jury – remember, the jury made the same finding. So is the hardest fact for you, the email about his revenue per researcher was probably fine? Is that the hardest fact? No, I'm glad you raised that, because the facts are a little different than they were as described. In August of 2011, the head of the whole firm said, we're facing major financial headwinds. We're going to have to lay off 3,500 people by the end of 2013. That wasn't a specific RIF direction directed to specific divisions. I was just saying, you know, here's bad news coming, and we're going to be laying off people for the next year and a half. So be warned, or two and a half years. And then the facts happened in December where Mr. Schumacher says, well, you know, it was hardly a ringing endorsement. He said the mortgage business is actually facing headwinds, but the revenue seems fine. Not great, but fine. Seems okay in this area. Then on January 3rd, the evidence was that's the first time that Mr. Hathaway, the head of FIC research, learned that they needed to lay off people in FIC research for this new RIF that had just been announced. And that's on January 3rd. On January 7th, Mr. Hathaway sends an email in which he says, I'm focusing on research folks in FX, foreign exchange, and in MBS, that is mortgage-backed security. And I can give you the site of that if that would be useful. The January 7th email was discussed at JA 1100 and 1538. So that's talking about Mr. Hathaway. Again, Mr. Hathaway had no knowledge of the alleged protected activity, so there's no possible way you can infer any discriminatory or retaliatory intent from this. He's just saying, you know, obviously I'm looking at, since I've got to lay off people, I'm looking at CMBS or mortgage-backed security research, among other places. And so, no, I don't think the December email is probative of anything other than he was doing an okay job and the business was doing okay, they thought, but not great. And then the directive came down, you've got to find some people to lay off. The most obvious place to go is somebody for a business that's no longer going to be a strategic target and focus of the firm. Thank you. If the Court has no further questions, we ask that the judgment be reversed or, in the alternative, that the case be remanded for a new trial limited to liability. Thank you. Thank you both for the argument. We'll take the matter under advisory.